UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:17-CV-00178-LLK

JESSE ORION KINSOLVING                                                                    PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Dockets # 16 and 21, and the case is ripe for determination. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 11).

Because the ALJ's decision not to give great or controlling weight to the medical opinion of Plaintiff's treating psychiatrist, John Sallee, was not supported by substantial evidence, the Court will REMAND this case to the Commissioner for a new decision.

### The ALJ's decision on Plaintiff's disability claim

Plaintiff was born in 1983 and alleges disability due to AIDS, affective disorder (including bipolar disorder), anxiety disorder (including panic disorder, obsessive compulsive disorder, agoraphobia, and post-traumatic stress disorder), and anorexia. (Administrative Record ("AR"), p. 20). He stated that he has had violent encounters with his father in the past, which he does not completely remember, and that he has made eleven attempts on his life. (AR, p. 26). Plaintiff was date raped in 2004, discovered he was HIV positive in 2005, and last worked in 2008 in San Francisco, after being gang raped. (AR, pp. 25, 54-56). He was unable to continue working due to rape trauma and fear of men. In 2009, he returned home to Kentucky, where he lives with his parents. (AR, p. 26). He no longer drives, and he relies on his mother

1

to take him to appointments. He mostly stays at home due to agoraphobia and fear of the public. (AR, pp. 69-74).

Plaintiff previously applied for Social Security disability benefits. The Administration denied his claim, and the denial became final. In 2014, he again applied for benefits, alleging he became disabled on September 1, 2010. (AR, pp. 18, 20). He was last insured for Title II benefits on March 31, 2011. (AR, p. 20).

In connection with the prior application, Plaintiff was examined in October 2010 at the request of the Commissioner by psychologist Thomas Muehleman, Ph.D. Dr. Muehleman diagnosed bipolar disorder, anxiety disorder with obsessive-compulsive symptoms, and anorexia nervosa. (AR, p. 624). Dr. Muehleman opined that these impairments likely render Plaintiff "moderately to markedly" impaired in his abilities to: 1) relate to fellow workers and supervisors, and 2) tolerate stress and pressures associated with day-to-day work activity. (*Id.*)

In February 2015, in connection with the present application, the Commissioner's non-examining psychologist Mary Thompson, Ph.D., opined non-disabling mental limitations. (AR, pp. 147-150).

In April 2015, treating psychiatrist John Sallee completed the standard mental assessment form. (AR, pp. 835-36). Like Dr. Muehleman, Dr. Sallee diagnosed bipolar disorder and obsessive-compulsive disorder. Dr. Sallee added that Plaintiff suffers from panic disorder. Dr. Sallee found that Plaintiff has "extreme" limitations in his abilities to: 1) complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, 2) respond to changes in the work setting, and 3) travel in unfamiliar places or use public transportation. Dr. Sallee further found that Plaintiff has "marked" limitations in his abilities to: 1) understand and remember detailed instructions, 2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, 3) work in coordination with proximity to others without being distracted by them, 4) interact appropriately with

the general public, 5) accept instructions and respond appropriately to criticism from others, and 6) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*).

In September 2016, Dr. Sallee opined that "I have high hopes for [Plaintiff's] future improvements through medication management and therapy, though I believe that the prospect for his ability to hold a regular job of any type is nearly nonexistent for the foreseeable future." (AR, p. 1032). Dr. Sallee based this opinion on the fact that Plaintiff "has been traumatized in the past, and this continues to affect him." (*Id.*). He "struggles on a nearly daily basis with panic attacks and anxiety, as well as mood symptoms" and "sometimes has problems with paranoia." (*Id.*).

In her January 2017 decision, the administrative law judge (ALJ) gave "little" weight to Dr. Muehleman's opinion, "partial" weight to Dr. Thompson's opinion, and found that Dr. Sallee's opinion "is not entitled to great or controlling weight, as it is not supported by the record." (AR, pp. 28-29). The ALJ found that Plaintiff is able to "perform simple and routine work having occasional contact with the public, coworkers, and supervisors" and can "perform work that is non-fast-paced or quota driven and any changes in [his] work routine or environment must be rare and gradually introduced." (AR, p. 25). The ALJ concluded that Plaintiff was not disabled through the decision date because, although he cannot perform his past relevant work, he retains the ability to perform a significant number of jobs in the national economy. (AR, p. 31). Examples of such jobs are medium scrap sorter, laundry laborer, and nursery worker (plants not children) and light collator, garment sorter, and cleaner. (*Id.*).

For informational purposes only, Plaintiff reports that he filed another application for benefits after the ALJ's decision and was awarded Title XVI supplemental security income (SSI) benefits. (Docket # 16, p. 8).

**The ALJ erred in weighing Dr. Sallee's opinion.**

A treating physician's medical opinion is entitled to special weight. It is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and

3

is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2). Even if it is not entitled to controlling weight, a treating physician's opinion might still be entitled to greater weight than any other opinion in the administrative record. The ALJ's decision must give "good reasons" for the weight given to a treating physician's opinion in light of the factors in 20 C.F.R. § 404.1527(c)(2)-(6).

The rationale for the rule giving special weight to treating physician opinions is that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2).

Dr. Sallee began treating Plaintiff in September 2010, and his extensive treatment notes are in the administrative record. (AR, pp. 113, 795-97, 877-90, 896-920, 968-70, 977-80, 1011-30). These notes indicate a family history of anorexia nervosa on Plaintiff's mother's side and bipolar disorder and schizophrenia on his father's side. (AR, p. 1012). Over the years, Dr. Sallee has prescribed a number of psychotropic drugs to treat Plaintiff's mental impairments, including trials of Zoloft, Lexapro, Prozac, Paxil, Celexa, Effexor, Wellbutrin, Cymbalta, Abilify, Risperidone, Seroquel, Latuda, Saphris, Lamictal, Trazodone, Ambien, and Lunesta. (AR, p. 1026). As of September 2016, Plaintiff was taking Alprazolam, Citalopram, Diazepam, Lamotrigine, and Hydrocodone. (AR, p. 1029).

In light of Plaintiff's extensive treatment with Dr. Sallee and Dr. Sallee's extensive prescription of psychotropic medication, Dr. Sallee's opinion (though perhaps not perfectly or completely) was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2). The ALJ, therefore, failed to give good reasons for declining to give it controlling weight. (AR, p. 29).

Even if Dr. Sallee's opinion was not entitled to controlling weight, the ALJ failed to give "good reasons" why it was not still entitled to greater weight than any other opinion in the administrative record concerning what Plaintiff can still do despite his impairments. "When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion." 20 C.F.R. § 404.1527(c)(2). "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion." *Id.* The ALJ's decision contains no discussion of these factors in relation to Dr. Sallee's opinion.

The ALJ found that Plaintiff's college transcript "does not support the extreme limitations alleged for memory issues, concentration, and completing tasks." (AR, p. 27). However, Plaintiff does not allege and Dr. Sallee did not find "extreme" limitations in these areas. As to memory issues, Dr. Sallee found that Plaintiff is moderately limited except that he is markedly limited with respect to detailed instructions. (AR, p. 835). As to concentrating and completing tasks, Dr. Sallee made findings in eight functional areas, finding that Plaintiff is slightly limited in three areas, moderately limited in two areas, markedly limited with respect to performing activities within a schedule and making decisions, and "extremely" limited in only one area, i.e., completing work without interruptions from psychologically based symptoms. (*Id.*). Plaintiff's college transcript is consistent with these findings because, despite attending college off and on between 2002 and 2014, he has yet to graduate; he has a large number of withdrawals; and he has completed few upper-level classes, which is consistent with his testimony that, due to his agoraphobia, he prefers to take classes online or when he can obtain special arrangements with professors. (AR, pp. 63-69, 449-51). To the extent the ALJ relied on Plaintiff's trip to Nashville as incompatible with his agoraphobia (AR, p. 27), the reliance in unpersuasive because he required an emergency room visit in Nashville due to an anxiety attack (AR, p. 636).

5

Finally, even if the ALJ did not err in declining to give great or controlling weight to Dr. Sallee's opinion, in giving "little" weight to Dr. Muehleman's opinion and only "partial" weight to Dr. Thompson's opinion (AR, pp. 28-29), the ALJ essentially rejected <u>every</u> medical opinion in the administrative record concerning what Plaintiff can still do despite his mental impairments and created and adopted her own medical opinion. The ALJ was unqualified to do this. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013) (quoting *Nguyen v. Sec'y of Health & Human Services*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, ... the ALJ was simply not qualified to interpret raw medical data in functional terms").

**A judicial award of benefits is unwarranted.**

The remaining question is the appropriate remedy. When a court finds that the ALJ's decision was not supported by substantial evidence, it may award benefits (as opposed to remanding for a new decision) "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Wiser v. Comm'r*, 627 F. App'x 523 (6th Cir. 2015) (quoting *Faucher v. Sec'y*, 17 F.3d 171, 176 (6th Cir. 1994)). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.* (citing *Mowery v. Sec'y*, 771 F.2d 966, 973 (6th Cir. 1985)).

Significantly, there is no vocational testimony concerning the effect of acceptance of Dr. Sallee's findings on Plaintiff's ability to perform jobs in the national economy. Plaintiff's position is that a judicial award of benefits is warranted because Dr. Sallee's findings (after being accepted) satisfy the medical criteria of Listings 12.04 and/or 12.06 of Appendix 1 of the regulations. (Docket # 16, pp. 2 and 4).

The B criteria of the Section 12.00 Listings are satisfied by a showing of at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration.

Dr. Sallee's findings are mental residual functional capacity (RFC) findings.  In contrast, "the limitations identified in the 'paragraph B' … criteria [of the Section 12.00 Listings] are not an RFC assessment."  Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *4.  The B criteria are clinical findings.  *Id.*  Therefore, neither Plaintiff nor this Court possesses the medical expertise necessary to translate Dr. Sallee's RFC findings into a conclusion that the B criteria are or are not satisfied.  Further, even if the Court were able to conclude that Plaintiff's mental impairments satisfy the B criteria, a judicial award of benefits would remain unwarranted because the decision (in the first instance) of whether the Listing is satisfied is "reserved to the Commissioner."  20 C.F.R. § 404.1527(d)(2).

**Order**

For the foregoing reasons, this matter is REMANDED to the Commissioner for a new decision reweighing the medical opinion of Plaintiff's treating psychiatrist, John Sallee, and for any further administrative proceedings deemed necessary and appropriate by the Commissioner.